UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:24-CV-80413

JEFFREY CITRON, an individual,

Plaintiff

vs.

TESLA, INC., a/k/a Tesla Florida, Inc.,
f/k/a Tesla Motors, Inc., a foreign corporation,

Defendant
_______________________________________/

**COMPLAINT**

Plaintiff, JEFFEY CITRON, an individual, by and through his undersigned counsel, hereby sues Defendant, TESLA, INC. a/k/a Tesla Florida, Inc, f/k/a Tesla Motors, Inc., and states as follows in support thereof:

**NATURE OF THE CASE**

1. This is an action for negligent bailment, breach of repair warranty, and violation of Florida's Deceptive and Unfair Trade Practices Act.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff, JEFFREY CITRON ("Citron"), is a resident of and is domiciled in the State of Florida.

3. At all times material hereto, Defendant, TESLA, INC. a/k/a Tesla Florida, Inc, f/k/a Tesla Motors, Inc. ("Tesla"), is and was a foreign corporation with its principal place of business in Texas, and is and was licensed and authorized to do business in the State of Florida.

4. At all times material hereto, Tesla was in the business of designing, testing, inspecting, manufacturing, distributing, selling, maintaining, repairing, and otherwise placing into

the stream of commerce, and causing same to come into the State of Florida, certain automobiles (including the automobile at issue herein and as more particularly identified below), and associated automobile parts.

5. At all times material hereto, Tesla conducted business throughout the State of Florida and in this District including, but not limited to, the operation and control of the Tesla automotive dealership located in West Palm Beach, Palm Beach County, Florida.

6. At all times material hereto, Tesla controlled the actions of the individuals at the Palm Beach County Tesla dealership and retained the ultimate decision-making authority regarding the factual matters described in this Complaint. The agents and representatives acting on behalf of Tesla included, but were not limited to, Parriss Hinkle, Jonathan ("Jon") Martinez, Kolby Robbins, Lars Morvay, Derek Davis, Samagh Coombs, Zachary Kirkhorn, and Robyn Denholm.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy, exclusive of interest, attorneys' fees, and costs, exceeds $75,000.00.

8. This Court has personal jurisdiction over Tesla pursuant to Section 48.193(1)(a), Florida Statutes, as the claims set forth herein arise from Tesla operating, conducting, engaging in, or carrying on a business or business venture in Florida, having an office in Florida, and committing a tortious act within Florida.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

10. On or about April 30, 2009, Citron purchased a brand new 2008 Tesla Roadster, VIN 5YJRE11BX81000354 (the "Vehicle") from Tesla.

11. The 2008 Roadster model was the first Tesla product to enter the market. Only 500 of these Roadsters were produced. Whereas fully battery-powered vehicles are ubiquitous on today's roadways, the 2008 Roadster was truly groundbreaking as it was the first highway legal, serial production, all-electric car to use lithium-ion battery cells. It was the first production battery-powered vehicle with performance and range capabilities that were comparable to traditional combustion-engine sports cars. At the time it debuted on the market, and at the time of Citron's purchase thereof, the 2008 Roadster's selling price exceeded six figures. It was an instant collector's item.

12. In order to better protect and preserve the Vehicle from the elements, Citron opted to include the application of "Paint Armor" at the time of purchase. Paint Armor is a protective film wrap that is applied over the exterior paint of a vehicle that is offered by Tesla at additional cost to its customers.

13. Citron took delivery of the Vehicle and stored it in a manner befitting its status as a collector's item, including keeping it in a climate-controlled garage. All routine maintenance for the Vehicle was completed in a timely manner.

14. For years, Citron treated the Vehicle as the collector's item it is. The Vehicle was not used every day and, instead, was only periodically driven so that it remained in good working order. Although the Vehicle is now over 15 years old, it has logged less than 3,500 miles.

15. In March 2019, the Vehicle's original Vehicle High Voltage Battery failed.

16. Shortly thereafter, the Vehicle was delivered to the Service Center of the Palm Beach County Tesla dealership to address and rectify the failure of the Vehicle High Voltage Battery.

17. Citron was advised that the Tesla dealership resolved the problem by removing the "dead" Vehicle High Voltage Battery and installing a new Vehicle High Voltage Battery in the Vehicle in or about April/May 2019 (the "Replacement Battery").

18. Tesla's standard written warranty covers the Replacement Battery for two years or 25,000 miles, whichever comes first. A true and correct copy of the applicable Tesla warranty (the "Warranty") is attached hereto as **Exhibit A**.

19. Tesla personnel further advised Citron, either directly or through his representative, that the Replacement Battery was covered by the Warranty.

20. The Warranty covers, inter alia, "the repair or replacement necessary to remedy any 'failures' that are determined by Tesla to have occurred under normal use of Tesla-manufactured Parts and Used Parts that are approved or branded by Tesla and purchased directly from Tesla."

21. The Warranty defines "failure" as "the complete failure or inability of a covered Part or Used Part to perform the function(s) for which it was designed due to defects in material or workmanship of the Part or Used Part manufactured or supplied by Tesla that occur under normal use," subject to certain limitation set forth therein.

22. In March 2021, while still within the coverage period of the Warranty, the Replacement Battery suffered a "failure," as defined by the Warranty, in that it became completely nonfunctional, through no fault of Citron.

23. The failure of the Replacement Battery was not discovered by Citron until early October 2021.

24. On or about October 5, 2021, shortly after discovering the Replacement Battery's failure, the Vehicle was delivered to the Service Center of the Palm Beach County Tesla dealership.

25. Other than the issue with the Replacement Battery, the Vehicle was in pristine condition when it was delivered to Tesla, having been kept by Citron in a climate-controlled garage.

26. Citron entrusted the Vehicle to Tesla at the dealership for the purpose of effectuating the repairs necessary to address and rectify the failed Replacement Battery.

27. Upon inspection, Tesla confirmed that the Replacement Battery had failed during the coverage period of the Warranty.

28. In connection with taking possession of the Vehicle and in an effort to persuade Citron to have the repair work performed at the Palm Beach County Tesla dealership, Citron and/or his agent(s) were told by Tesla, including its agent, Jon Martinez, that any repairs or replacement parts needed in connection with the failed Replacement Battery would be covered by the Warranty.

29. The process took an inordinately prolonged period of time – approximately two years – during which the Vehicle was in Tesla's exclusive possession. At some point during this timeframe, a second new replacement battery was installed in the Vehicle.

30. On August 27, 2023, Tesla advised Citron that the Vehicle was ready to be picked up.

31. Shortly thereafter, in September 2023, Citron and/or his agent(s) went to pick up the Vehicle but discovered that it had suffered extensive exterior damage including to the Paint Armor and exterior paint itself while in Tesla's exclusive possession.

32. Citron subsequently learned that during the two years the Vehicle was in Tesla's exclusive possession, and notwithstanding its significance and collectible status (which was clearly known to Tesla), it had been left outside and unprotected from the harsh elements of South Florida weather for extended periods of time.

33. Citron further learned that during Tesla's exclusive possession of the Vehicle from October 2021 to October 2023, Tesla took no steps to protect the Vehicle from exposure to the elements.

34. Citron initially declined to take possession of the Vehicle based on the damage and requested that the Vehicle's condition be restored to what it was when Citron had delivered it to Tesla in October 2021 for the battery repairs.

35. Tesla, however, declined to restore the Vehicle to its previous condition or to pay for such restoration to occur.

36. Tesla further declined to honor the Warranty related to the failed Replacement Battery and charged the cost and expenses for same to Citron.

37. The disputes regarding the condition of the Vehicle and the warranty coverage were escalated to involve regional and national employees of Tesla.

38. Numerous Tesla employees involved in the dispute were not associated with the West Palm Beach location. For example, individuals such as Parriss Hinkle held titles like "Regional Manager for Sales, Service, and Delivery for South Florida & Puerto Rico." Other individuals were on Tesla's nationwide Executive Care team.

39. Because it was the only way to recover possession of the Vehicle, Citron paid for the replacement battery repairs (under protest) and took possession of the damaged Vehicle in October 2023.

40. All conditions precedent to the bringing of this action have occurred, have been satisfied, or have been waived.

**COUNT I**
***Negligent Bailment***

41. Paragraphs 1 through 40 are incorporated by reference as though fully set forth herein.

42. In or about October 2021, Citron and Telsa entered into a valid and enforceable verbal bailment agreement pursuant to which Citron entrusted Tesla with the Vehicle to complete the necessary repairs.

43. Citron was the owner/bailor of the Vehicle and Tesla was the possessor/bailee of the Vehicle when Tesla accepted the Vehicle at Tesla's West Palm Beach location in October 2021 to complete the necessary repairs.

44. This arrangement between Citron and Tesla was a bailment of mutual benefit.

45. The Vehicle was to be repaired by Tesla pursuant to the applicable Warranty provisions. Alternatively, Tesla was to be compensated by Citron for the services provided. Tesla has since invoiced Citron for the repair costs, for which he has paid (under protest).

46. Citron delivered the Vehicle to Tesla in pristine condition, except for the failed second Vehicle High Voltage Battery which Tesla advised would be repaired or replaced under the Warranty.

47. From the time the Vehicle was delivered to Tesla's Palm Beach County Dealership in October 2021 and through the time of its return to Citron, the Vehicle was in Tesla's exclusive possession and control.

48. Tesla had a duty to exercise reasonable care in possessing the Vehicle before, during, and after Tesla completed the promised repairs to the vehicle.

49. Tesla breached this duty and was negligent and/or grossly negligent in this regard, however, as the Vehicle was substantially damaged while in Tesla's exclusive possession.

50. Tesla failed to exercise that degree of care toward the Vehicle that a reasonably prudent person would bestow on a similar vehicle in their possession.

51. Specifically, Tesla negligently stored the Vehicle while it was in its possession, leaving it outside, unprotected, and exposed to the elements for extended periods of time.

52. Tesla failed and/or refused to make any effort to restore the Vehicle to its appropriate condition upon its return to Citron.

53. As a direct and proximate cause of Tesla's breach of its duty, Citron was damaged.

54. Upon information and belief, the damage to the Vehicle, necessary repairs to return the vehicle to its prior condition, and the diminution of value of the 2008 Roadster exceeds $75,000.00.

WHEREFORE, Plaintiff, JEFFREY CITRON, respectfully requests this Court to enter a judgment in his favor and against Defendant, TESLA, INC., a/k/a Tesla Florida, Inc., f/k/a Tesla Motors, Inc., for damages, court costs, and such other and further relief that the Court deems just and appropriate.

## COUNT II
### *Breach of Written Warranty*

55. Paragraphs 1 through 40 are incorporated by reference as though fully set forth herein.

56. Tesla provided the Warranty in connection with new parts for the Roadster model.

57. The Warranty applied to and covered the Replacement Battery.

58. The Warranty was part of the bargained-for transaction between Citron and Tesla relative to his purchase of the Vehicle and to the installation of the Replacement Battery.

59. The Warranty applies to the Vehicle and the Replacement Battery and required Tesla to replace the Replacement Battery at no cost to Citron, provided the conditions of the Warranty were met.

60. The Replacement Battery stopped functioning within the period of the Warranty, thus triggering Tesla's obligation to replace it at no cost to Citron.

61. Additionally, Tesla's agent(s), including Jon Martinez, affirmed that the service to or replacement of the Replacement Battery was to be covered by the Warranty.

62. Citron relied on the Warranty in bringing the Vehicle to Tesla to replace the Replacement Battery.

63. Tesla breached its duty under the Warranty by not honoring it and instead requiring Citron to pay for the new replacement battery.

64. As a direct and proximate cause of Tesla's breach of warranty, Citron has suffered damages in that he was forced to pay in excess of $33,000.00 for the new replacement battery and associated labor costs that should have been fully covered by the Warranty.

WHEREFORE, Plaintiff, JEFFREY CITRON, respectfully requests this Court to enter a judgment in his favor and against Defendant, TESLA, INC., a/k/a Tesla Florida, Inc., f/k/a Tesla Motors, Inc., for damages, court costs, and such other and further relief that the Court deems just and appropriate.

**COUNT III**
***Breach of Verbal Warranty***
***(Pled in the alternative to Count II)***

65. Paragraphs 1 through 40 are incorporated by reference as though fully set forth herein.

66. This Count is alleged in the alternative to the claim for breach of the written Warranty set forth in Count II and shall apply if it is determined that the written Warranty was not available to Citron in connection with the repairs at issue in this matter.

67. In an effort to induce Citron to replace the Replacement Battery through Tesla, Tesla personnel represented to Citron, either directly or through his representative, that the costs of doing so – including both parts and labor – would be covered by Tesla (the "Verbal Warranty").

68. At the time the Verbal Warranty was made, Tesla either knew or should have known that it would serve to induce Citron into having Tesla perform the particular services.

69. At the time the Verbal Warranty was made, Tesla either knew or should have known that it was false.

70. Citron reasonably relied on the Verbal Warranty in deciding to have the repair services provided by Tesla, to his detriment.

71. Tesla performed the services at issue but failed to honor the Verbal Warranty, thereby forcing Citron to pay for same in order to recover his Vehicle.

72. As a direct and proximate result of Tesla's failure to honor the Verbal Warranty, Citron has been damaged.

WHEREFORE, Plaintiff, JEFFREY CITRON, respectfully requests this Court to enter a judgment in his favor and against Defendant, TESLA, INC., a/k/a Tesla Florida, Inc., f/k/a Tesla Motors, Inc., for damages, court costs, and such other and further relief that the Court deems just and appropriate.

**COUNT IV**
***Florida Deceptive and Unfair Trade Practices Act***
***Chapter 501, Part II, Florida Statutes***

73. Paragraphs 1 through 40, 42 through 54, 56 through 64, and 66 through 73 are incorporated by reference as though fully set forth herein.

74. By entering into the bailment agreement with Citron regarding the Vehicle in order to perform certain services and repairs thereto, Tesla represented that it would properly care for the Vehicle while it was in its possession and would return the Vehicle to Citron in at least the same condition as when it was initially received from Citron in October 2021.

75. At the time it received the Vehicle in connection with the bailment agreement, Tesla knew or should have known that it was a collector's item and of enhanced value by virtue of its early and limited production status.

76. Tesla engaged in deceptive acts and/or unfair practices in terms of its failure to properly maintain the condition and quality of the Vehicle and its failure to honor the Warranty or the Verbal Warranty.

77. When Citron received the Vehicle back from Tesla, it was not in the condition that had been promised.

78. In fact, the Vehicle was in far worse condition than what Tesla had agreed to maintain and return to Citron.

79. The Vehicle was damaged and suffered a diminution in value while it was in Tesla's possession.

80. By failing to live up to its representations regarding maintaining the condition of the Vehicle as the collector's item that it is, and by failing to honor the Warranty or Verbal Warranty, Tesla engaged in deceptive acts and/or unfair trade practices.

81. Tesla's deceptive acts and/or unfair trade practices caused Citron damage.

82. Citron has retained the undersigned attorneys to represent him in connection with prosecuting this action and is obligated to pay them a reasonable fee, which fee is recoverable under Section 501.2105, Florida Statutes.

WHEREFORE, Plaintiff, JEFFREY CITRON, respectfully requests this Court to enter a judgment in his favor and against Defendant, TESLA, INC., a/k/a Tesla Florida, Inc., f/k/a Tesla Motors, Inc., for actual damages in an amount equal to the difference between the market value of the Vehicle in the condition it was received by Plaintiff from Defendant and the market value of the Vehicle in the condition it should have been received in, for reasonable attorney's fees pursuant to Section 501.2105, Florida Statutes and court costs, and for any such further relief as the Court deems necessary and just.

Dated this 5th day of April 2024.

Respectfully submitted,

| | |
|---|---|
| **DANIEL A. MILLER, P.A.**<br>*Co-Counsel for Plaintiff, Jeffrey Citron*<br>11987 Southern Blvd., No. 1<br>Royal Palm Beach, Florida 33411<br>Telephone: (561) 463-5929<br><br>By: /s/ *Daniel A. Miller*<br>Daniel A. Miller, Esq.<br>Florida Bar No. 091804<br>daniel@damillerlaw.com<br>service@damillerlaw.com | **PFAU COCHRAN VERTETIS AMALA, PLLC**<br>*Co-Counsel for Plaintiff, Jeffrey Citron*<br>909 A Street, Suite 700<br>Tacoma, Washington 98402<br>Telephone: (253) 777-0797<br><br>By: /s/ *Thomas B. Vertetis*<br>Thomas B. Vertetis, Esq.<br>Washington State Bar No. 29805<br>tom@pcvalaw.com<br>William T. McClure, Esq.<br>Washington State Bar No. 54622<br>wmcclure@pcvalaw.com<br>(Motions to Appear *Pro Hac Vice* to be filed) |